Stewart F. Hancock, Jr., J.
Petitioners are members of the Town Board of the Town of Onondaga. In this article 78 proceeding they challenge the legality of the action of the Onondaga County Legislature in establishing the Harbor Brook Drainage District. Among other things, petitioners contend that all or some of the high-elevation land in the Town of Onondaga which has been included in the proposed district could not benefit in any way from the drainage thereof, and that such land may not legally be included or subjected to the ad valorem levy which is to be imposed for the purpose of financing the improvements. Respondents have not answered but have moved to dismiss pursuant to CPLR 7804 (subd [f]), upon the ground that the petition is insufficient as a matter of law.
The proposed district includes the entire drainage basin of Harbor Brook, which starts as a small stream in the high lands of the Town of Onondaga south of Seneca Turnpike and meanders northerly into the Town of Geddes, then easterly into low-lying land within the City of Syracuse. It is apparent from the maps of the drainage district and the commissioner’s report that the flood-prone area is entirely within the City of Syracuse and that the purpose of the district is to alleviate the flooding problem in the Lydell Street/Hoefler Street/ Grand Avenue section of the city.
Respondents urge dismissal of the petition claiming that, as a matter of law, all properties within the drainage basin are properly includable in the district, no matter what their location or elevation and regardless of whether the land is in actual need of drainage and receives any discernible benefit therefrom. Respondents’ position, in effect, is that an actual, though indirect and unspecified, benefit — sufficient to satisfy the applicable legal tests and to justify the special assessment —must be presumed to accrue to all lands in the district solely by reason of their location within the drainage basin.
If respondents are correct in their assertion of a conclusive presumption of benefit, the petition should be dismissed. If not, and if the motion papers present a triable issue of fact, the motion to dismiss must be denied and the case referred to trial (CPLR 7804, subd [h]), for a determination of which — if any — of the Town of Onondaga properties should be excluded *165 from the district as a matter of law because they would derive no benefit from the proposed drainage.
Respondents’ "test” of a conclusive presumption of benefit resulting solely from inclusion within the drainage basin is not consistent with the law. The established test for determining whether a particular parcel of land stands to benefit from an improvement and may thus be subjected to a special assessment therefor is whether the value of the parcel itself will be enhanced by the improvement. (People ex rel. Delaware, Lackawanna & Western R. R. Co. v Wildy, 262 NY 109.) The "enhancement of value” test for inclusion of land in a drainage district was established by the Legislature in the Conservation Law in 1936 (L 1936, ch 684, § 490-a) and appears to adopt the holding of the Court of Appeals in Wildy. Similar language currently appears in subdivision 3 of section 15-1905 of the Environmental Conservation Law, which states in part: "Drainage improvement districts generally shall include all such portions of a natural drainage basin as should be treated as one project on the assumption that all lands in such basin needing drainage are to be improved. * * * It is intended that the boundaries of the district shall include all lands which would be enhanced in value by the construction of complete drainage works therefor and that land, the value of which will not be enhanced, shall be excluded, but in order to simplify the boundaries of the district certain relatively small areas of land not so enhanced may be included on condition that they bear no part of the cost of any improvement work.” (Emphasis supplied.) Other sections of the Environmental Conservation Law amplify the meaning of "enhancement of value” and strongly suggest that the focus of the test is the extent to which a parcel of land is economically benefited by being drained.
Subdivision 7 of section 15-1903 of the Environmental Conservation Law provides: "A parcel of land is served by any ditch or structure useful for the drainage thereof. Thus any ditch which actually drains the parcel or which intercepts and carries away water which would otherwise reach the parcel, or any ditches which carry water collected by such drainage or intercepting ditches serve such parcel.” (Emphasis supplied.)
Environmental Conservation Law (§ 15-1919, subd 2) uses "drainage enhancement” as the basis for apportionment of the cost of future drainage construction, defining it as follows: *166 "The drainage enhancement of any parcel of land is the increase in the value of such parcel which, on the basis of prices of land locally current at the time the determination is made, will occur as the result of improving that parcel by drainage works from its original undrained condition to the maximum condition of drainage which is practical.” (Emphasis supplied.)
While the instant district is not being formed pursuant to these particular statutory provisions, they are clearly significant, as an expression by the Legislature of what it means by "enhancement of value” and as guidelines for determining what property should be included in a drainage district under that test. Reading sections 15-1903 (subd 7), 15-1905 (subd 3), and 15-1919 together,[1] one could reasonably conclude that the Legislature intended only properties which were actually drained by the improvement, and thus economically benefited by it, to be included in a drainage district. Such interpretation is consistent with case law on the subject. In Matter of Stoltz v Water Power & Control Comm. (258 App Div 440) the court annulled the assessment for a drainage district and remanded to the commission to determine as a question of fact whether any of the properties were flooded or inundated by the Wall-kill River and hence whether the properties would be benefited by inclusion in the district and should be taxed therefor.[2] (See, also, Matter of Sturr v Water Power & Control Comm., 267 App Div 44, 46.)
The sole issue that must be determined by the court on this review of the Legislature’s act in establishing this district is whether any or all of the property in the Town of Onondaga "can derive no benefit” from the proposed district and thus, as a matter of law, must be excluded. (Matter of Long Is. R. R. *167 Co. v Hylan, 240 NY 199.) A resolution of this issue requires proof to determine, from the nature and extent of the proposed improvement and the situation of the various lands in the Town of Onondaga with respect thereto, whether any or all of these parcels can be said to be enhanced in value as defined by the applicable law.
The motion to dismiss is denied. Respondents shall file an answer within 20 days, and the matter is referred to Trial Term for the taking of proof and resolution of the factual issue (CPLR 7804, subd [h]).

. Note particularly the phrases "needing drainage” (§ 15-1905, subd 3); "useful for the drainage thereof’ and "which actually drains” (§ 15-1903, subd 7); and "increase in the value of such parcel * * * as the result of improving that parcel by drainage” (§ 15-1919, subd 2).

. In Stoltz (supra) the commission argued that testimony from living persons as to whether their properties were in fact subject to flooding from the river would be useless, since only testimony about "conditions as they were before any drainage work was done (colonial times)” could resolve the issue. To this the Appellate Division replied (pp 443-444): "One has difficulty in taking seriously the statement that the inundation of land is so complex a matter that one without knowledge of conditions in the colonial period is not qualified to testify. Lands which have not been flooded within the memory of the oldest inhabitants should not be taxed in anticipation of a return to conditions that existed during the paleozoic period or in * * * colonial times.”